<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |
|---|---|

October 2, 2020

Abdul Cherry
Devens, Federal Medical Center
P.O. Box 879
42 Patton Road
Ayer, MA 01432
*Pro se Defendant*

Mary E. Toscano, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

### LETTER OPINION FILED WITH THE CLERK OF THE COURT

 **Re:** *United States v. Abdul Cherry*
   **Criminal Action No. 09-715 (SDW)**

Litigants:

 Before this Court is Defendant Abdul Cherry's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). This Court, having considered the parties' submissions and for the reasons discussed below, denies Defendant's motion.

**DISCUSSION**

A.

 Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 824 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).[1]  As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.

B.

On September 23, 2009, Defendant pled guilty to conspiracy to distribute 100 grams or more of heroin, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and in violation of 21 U.S.C. § 846. (D.E. 45 at 4; *see also* D.E. 11-13.)  On May 30, 2017, the Court sentenced Defendant to 70 months of imprisonment. (D.E. 28-29.)[2] On September 29, 2017, between sentencing and Defendant's voluntary surrender date, Defendant was arrested for distributing four bricks of heroin, after which Defendant immediately self-surrendered to the BOP. (D.E. 45 at 4-5; D.E. 45-1.) He is currently serving his sentence at the Camp at FMC Devens. (D.E. 41 at 2; D.E. 45 at 1.) Defendant is scheduled for release on February 10, 2022. (D.E. 41 at 2; D.E. 45 at 5.)

Defendant made his administrative request seeking compassionate release to the Federal Bureau of Prisons ("BOP") on May 11, 2020, which was denied on May 29, 2020. (D.E. 45 at 5; D.E. 45-2.) On May 21, 2020, Defendant filed the instant motion, and subsequently filed papers supplementing this motion on June 9 and July 17, 2020. (D.E. 41, 43, 44.)[3]  The Government opposed on August 30, 2020. (D.E. 45.) Defendant has not submitted a reply.

C.

Defendant, a 41-year old, African American male, contends that due to his race, obesity, and sickle cell trait, if he contracts COVID-19, he has a greater risk of serious illness, would not be able to provide self-care, and would not be expected to recover. (D.E. 41 at 1, 6, 10; D.E. 44 at 1, 3.) *See also* U.S.S.G. § 1B1.13, cmt. n.1(A). In turn, he maintains that he will very likely contract COVID-19 at the Camp, given his proximity to other inmates, his inability to social

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, cmt. n.1(A).

[2] At the time of sentencing, Judge William H. Walls presided over this matter.

[3] The parties do not dispute that, at this point, Defendant has satisfied the exhaustion requirement, per 18 U.S.C. § 3582(c)(1)(A). (*See* D.E. 45 at 5.)

distance, and the prison's failure to "adequately implement procedures" to protect inmates, among other factors. (D.E. 41 at 6-8; D.E. 43 at 1-4.) Thus, he argues that he has shown an extraordinary and compelling reason justifying early release.

### D.

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Even considering Defendant's (1) purported sickle cell trait, (2) obesity, (3) race, and (4) the conditions at the Camp, Defendant has not established compelling and extraordinary reasons, as required by the FSA, so as to justify release. *See Epstein*, 2020 WL 1808616, at *2; 18 U.S.C. § 3582(c)(1)(A).

Initially, the Centers for Disease Control and Prevention ("CDC") has listed sickle cell disease and obesity (a body mass index ("BMI") of 30 or higher) as conditions which increase the risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Oct. 1, 2020).

First, the record does not support Defendant's assertion that he has the sickle cell trait. (*See* D.E. 45, Ex. D at 3, 15, 21-22, 31, 47, 55, 61, 73-74, 118 (Defendant consistently denying having the sickle cell trait or sickle cell anemia).)

Second, the record generally supports that Defendant is obese. Defendant states his weight is 220 pounds, and his BMI is 33. (D.E. 44 at 1.) The record shows that Defendant's weight on October 6, 2017, was 220.0 pounds, and between 205.6 and 208.0 pounds in August 2018 (with a BMI between 30 and 31, given his height of 69 inches). (D.E. 45, Ex. D at 18, 52, 58, 64.) However, despite Defendant's obesity, the record also shows that he is generally healthy, capable of weight loss, and that nothing suggests his medical care is inadequate, or that his ability to provide self-care is diminished. (*See, e.g.*, D.E. 45, Ex. D at 1, 42.) *See also United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (finding defendant with hypertension and obesity failed to show extraordinary and compelling reasons for release where his conditions were not severe, and the BOP was "adequately managing" his medical care); *United States v. Gore*, Crim. No. 10-250, 2020 WL 3962269, at *4 (D.N.J. July 13, 2020).

Third, given the conclusions of the CDC and other courts, this Court finds that Defendant's race does not help him establish an extraordinary and compelling reason for release. This Court understands and sympathizes with Defendant's position, particularly in light of the highly disturbing data showing that African Americans face significantly higher rates of cases, hospitalizations, and deaths from COVID-19, as compared to white, non-Hispanic persons (2.6, 4.7, and 2.1 times higher, respectively). *See* CDC, *COVID-19 Hospitalization and Death by Race/Ethnicity*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last accessed Oct. 1, 2020). Nevertheless, the CDC has concluded that these disparities show that race is a "risk

marker[] for other underlying conditions that impact health – including socioeconomic status, access to health care, and increased exposure to the virus due to occupation," and thus, is not an independent cause in increasing the risk of severe illness due to COVID-19. *Id.* Courts have consistently agreed with this conclusion, and this Court is constrained to do so as well. *See, e.g.*, *Alexander*, 2020 WL 2507778, at *4 (finding "it is not clear that being African-American increases Defendant's risk of complications from . . . COVID-19, in the same manner as one's underlying medical conditions," and noting that "other systemic economic and social issues affecting the African American community" may be the cause of these higher rates of illness and death); *United States v. Green*, Crim. No. 05-205, 2020 WL 3642860, at *4 (W.D. Pa. July 6, 2020); *United States v. Leigh-James*, Crim. No. 15-188, 2020 WL 4003566, at *8 (D. Conn. July 15, 2020).

Lastly, Defendant did not have COVID-19 at the time of briefing, and his risk of contracting it at the Camp appears, all things considered, relatively lower. Though two inmates have passed away due to COVID-19 and two staff members currently report positive for it, FMC Devens currently has no reported positive inmate cases. *See* BOP, *COVID-19*, *available at* https://www.bop.gov/coronavirus/ (last accessed Oct. 1, 2020). Further, Defendant is located at the less dense Camp within FMC Devens, lowering the likelihood he will contract the virus. *See* BOP, *FMC Devens*, *available at* https://www.bop.gov/locations/institutions/dev/ (last accessed Oct. 1, 2020) (noting 63 of FMC Devens' 788 inmates are at the Camp).

Though Defendant has potentially one CDC-recognized risk factor, obesity, given his overall health, and the conditions at the Camp, Defendant has failed to establish "extraordinary and compelling" reasons justifying release under the FSA.

This Court also considers the factors set out in 18 U.S.C. § 3553(a) when determining whether to grant a sentence reduction.[4] These factors disfavor a sentence reduction. A reduced sentence would neither "reflect the seriousness of the offense," nor "afford adequate deterrence." 18 U.S.C. § 3553(a)(2). First, Defendant has only served a little over half of his 70-month sentence, thus, release would represent a very significant reduction. (*See* D.E. 41 at 2, D.E. 45 at 34.) Second, Defendant's history reflects a need for deterrence. For example, after his sentencing for pleading guilty to conspiring to distribute 100 grams or more of heroin, but prior to incarceration, Defendant was arrested for distributing four bricks of heroin. (D.E. 45 at 4-5; D.E. 45-1.) The § 3553(a) factors do not favor a sentence reduction.

---

[4] The following § 3553(a) factors are applicable to this Court's analysis:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant . . . .
18 U.S.C. § 3553(a).

This Court is sympathetic to Defendant's situation. However, he has not shown "extraordinary and compelling" reasons justifying early release or that the § 3553(a) factors favor early release. This Court is therefore satisfied that early release is not warranted.

## **CONCLUSION**

Defendant's Motion for Compassionate Release is **DENIED** without prejudice. An appropriate order follows.

   /s/ Susan D. Wigenton     
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties